UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>DEBORAH L. BOARDMAN<br>UNITED STATES DISTRICT JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-7810<br>Fax: (410) 962-2577<br>MDD_DLBChambers@mdd.uscourts.gov |

September 1, 2021

LETTER TO COUNSEL

      RE:    *Everlena G. v. Kijakazi*[1]
                Civil No. DLB-20-784

Dear Counsel:

     On March 24, 2020, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. Pl.'s Mem., ECF 16; Def.'s Mem., ECF 21; Pl.'s Reply, ECF 22. I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

     Plaintiff filed her claims for benefits on February 23, 2017, and March 2, 2017, alleging an onset date of February 16, 2015. Administrative Transcript ("Tr.") 360–61, 372–77. The SSA denied her claims initially and on reconsideration. Tr. 249–53. An Administrative Law Judge ("ALJ") held a hearing on January 30, 2019. Tr. 188–211. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 72–97. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1–7; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. *Office of the Commissioner*, Soc. Sec. Admin., www.ssa.gov/org/coss.htm (last visited July 21, 2021). Pursuant to the last sentence of 42 U.S.C. § 405(g), actions brought under that Section "survive notwithstanding any change in person occupying the office of the Commissioner of Social Security." Substitution of the successor as the party in interest is automatic. Fed. R. Civ. P. 25(d).

*Everlena G. v. Kijakazi*
Civil No. DLB-20-784
September 1, 2021
Page 2

The ALJ found plaintiff severely impaired by "hernia, [sic] irritable bowel syndrome, depression, and anxiety." Tr. 78. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She can perform simple, routine tasks and can understand, remember, and carry out simple instructions.

Tr. 80. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform her past relevant work but could perform other jobs existing in significant numbers in the national economy. Tr. 89–91. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 91.

On appeal, plaintiff argues the ALJ's decision fails to comply with the requirements of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Pl.'s Mem.; Pl.'s Reply. I agree the ALJ failed to comply with *Mascio*'s mandate. Accordingly, I remand, but I express no opinion as to plaintiff's ultimate entitlement to benefits.

The Fourth Circuit in *Mascio* remanded for, as pertinent to this case, the inadequacy of the ALJ's RFC assessment with respect to the plaintiff's "moderate difficulties" in concentration, persistence, or pace ("CPP"). 780 F.3d at 638. CPP is one of four broad functional areas an ALJ must consider when evaluating a claimant's mental impairments.[2] 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b); *see* 20 C.F.R. §§ 404.1520a, 416.920a (explaining the "special technique" for evaluating the severity of a claimant's mental impairments). The ALJ assesses the extent to which the claimant's impairment "interferes with [her] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The ALJ then rates a claimant's degree of limitation in the four areas using a five-point scale: none, mild, moderate, marked, or extreme. *Id*. §§ 404.1520a(c)(2), 416.920a(c)(4). A moderate limitation signifies the claimant's "fair" abilities in the relevant functional area. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c).

In *Mascio*, the ALJ found the plaintiff moderately limited in CPP but confined the plaintiff's nonexertional RFC only to "unskilled work." 780 F.3d at 637–38. The Fourth Circuit remanded, holding an ALJ does not summarily account for a moderate CPP limitation by restricting a claimant to "simple, routine tasks or unskilled work . . . [because] the ability to perform simple tasks differs from the ability to stay on task." *Id*. at 638; *see Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in CPP did not

---

[1] ALJs also assess three other functional areas: (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; and (3) the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b) (the "paragraph B" criteria).

*Everlena G. v. Kijakazi*
Civil No. DLB-20-784
September 1, 2021
Page 3

translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Mascio*, 780 F.3d at 638.

> In this case, the ALJ found plaintiff was moderately limited in CPP:
>
> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has only moderate limitations. The claimant contended that she has limitations in concentrating generally, reading, focusing generally, and maintaining a regular work schedule. On the other hand, as further explained below, she also said she is able to prepare meals, read, drive, manage funds, handle her own medical care, and attend church. Additionally, the record fails to show any mention of distractibility.

Tr. 79. The ALJ then determined that plaintiff retained the nonexertional RFC to "perform simple, routine tasks and . . . understand, remember, and carry out simple instructions." Tr. 80. In view of *Mascio*'s mandate that an ALJ does not summarily account for a moderate limitation in CPP by limiting a claimant to simple, routine tasks, *see Mascio*, 780 F.3d at 638, remand is required unless the ALJ explained how plaintiff could maintain CPP while performing work involving only "simple, routine tasks," *see* Tr. 80.

The Commissioner argues that the ALJ adequately explained her determination and that this case is therefore analogous to *Shinaberry*, 952 F.3d 113. *See* Def.'s Mem. 8–10. I disagree. In *Shinaberry*, the Fourth Circuit held that an ALJ adequately explained an RFC determination limiting the moderately CPP-limited plaintiff to "simple, routine, repetitive tasks." 952 F.3d at 120–23. The ALJ found that the plaintiff was severely impaired by borderline intellectual functioning, that this mental impairment resulted in a moderate CPP limitation, and that an RFC confined to "simple, routine, repetitive tasks" accounted for that limitation. *Id.* at 119–20. The ALJ explained the reliance on evidence from the state agency psychological consultants, who explained that the plaintiff was moderately limited in performing complex tasks. *Id.* at 120. The ALJ also relied on evidence from a consultative psychological examiner, who "opined that the claimant would have limits in her ability to complete a workweek in a job requiring reading and math calculation, because of her weakness in her processing skills" and "that [the plaintiff's] concentration and task persistence were adequate." *Id.* at 121–22. Further, the plaintiff's mental impairment was a "lifelong borderline intellectual disability," with which "she had been gainfully employed for decades despite her mental limitations." *Id.* Thus, in *Shinaberry*, the ALJ cited detailed medical findings that identified the origin of the plaintiff's CPP limitation—complex tasks that implicate more intense mental processing—and sufficiently explained how an RFC limited to "simple, routine, repetitive tasks" accounted for her difficulty with CPP. *See also Sizemore v. Berryhill*, 878 F.3d 72, 80–81 (4th Cir. 2017) (affirming an ALJ's RFC determination that a moderately CPP-limited plaintiff could maintain CPP while performing "simple one, two-step tasks" because the ALJ discussed evidence from doctors that the plaintiff was capable of showing sustained attention for "simple, routine tasks," "basic, routine tasks," and "simple repetitive tasks").

*Everlena G. v. Kijakazi*
Civil No. DLB-20-784
September 1, 2021
Page 4

In contrast, the ALJ in this case did not explain how the RFC accounted for plaintiff's moderate CPP limitation. The ALJ specifically set off a section of her decision to discuss plaintiff's CPP limitation:

> The record shows that initially, the claimant stated she reads very well, can pay attention "very long," and finishes what she starts before she takes her medications. On examination, she was repeatedly noted to have no sedation, confusion, or cognitive impairment. In early 2015, she kept track of her FMLA paperwork and repeatedly reminded the doctors to follow up with completing forms in support of her application. In mid-December 2017, she reported good concentration. In mid-October 2018, she was noted to have maintained one coping skill.

*See* Tr. 86–87. Absent from this section is any reference to plaintiff's difficulty with complex tasks or capabilities with respect to simple tasks. Rather, the ALJ cited normal findings that might suggest the ALJ believed plaintiff was actually more capable than someone with moderate CPP limitations. But since the ALJ herself found that plaintiff was moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks. *See* Tr. 79. The ALJ did neither. This case is similar to *Brocato v. Cmm'r, Soc. Sec. Admin.*, No. SAG-16-2540, 2017 WL 3084382, at *3 (D. Md. July 19, 2017), in which Judge Gallagher was "unable to ascertain whether the ALJ truly believed [plaintiff] to have moderate difficulties in [CPP], instead of mild, or no difficulties, and how those difficulties restrict her RFC to" "simple[,] routine tasks." Accordingly, remand is appropriate.

The Commissioner argues that certain other portions of the ALJ's decision sufficiently explain the ALJ's RFC determination. I disagree. With respect to the ALJ's special technique paragraph, the ALJ explained her finding that plaintiff was moderately limited in CPP. The discussion of plaintiff's capabilities in that paragraph explains why plaintiff's CPP limitation is "only moderate," rather than marked or extreme. *See* Tr. 79; 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b) ("To satisfy the paragraph B criteria . . . [and meet or equal a listed impairment,] your mental disorder must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."). It does not explain the RFC determination. Further, the ALJ did not connect the complexity of tasks with plaintiff's CPP limitation at any point during that paragraph. The ALJ's broad statement that "the objective medical evidence and other evidence of record is inconsistent with a disabling level of impairments," *see* Tr. 82, does not explain her RFC determination or elucidate how plaintiff could perform simple tasks throughout a workday. Further, while plaintiff may have argued she experienced disabling CPP limitations, it was the ALJ who found that plaintiff's limitation was moderate. The issue here is the unexplained asymmetry between the ALJ's findings—not the credibility of plaintiff's complaints. *See Mascio*, 780 F.3d at 638.

The ALJ also discussed plaintiff's activities of daily living and found they were inconsistent with plaintiff's stated limitations, *see* Tr. 80–89, but the ALJ's analysis insufficiently explains how plaintiff, who the ALJ found was moderately limited in CPP, could persist throughout the workday. For example, the ALJ wrote, "In mid-December 2017, [plaintiff]

reported she was able to cook and takes care of her grandchildren, suggesting that she has not been working due to caring for her grandchildren, rather than the allegedly disabling impairments." *See* Tr. 82 (internal citations omitted). However, in the record the ALJ cites, plaintiff's provider noted only that plaintiff listed cooking as an ability, *see* Tr. 1149, and that plaintiff "enjoys cooking and taking care of her grandchildren," *see* Tr. 1150. The note contains no reference to how much time she actually spent cooking, the complexity of that activity, or whether plaintiff actually did spend any time taking care of her grandchildren after her alleged onset date. *See* Tr. 1149–50. The "missing explanation" contemplated in *Mascio* relates to how a moderately CPP-limited claimant could engage in a type of work eight hours per day, five days per week. *See Mascio*, 780 F.3d at 637–38 ("Perhaps the ALJ can explain why Mascio's moderate limitation in [CPP] at step three does not translate into a limitation in Mascio's residual functional capacity."); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at 1* (July 2, 1996) ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). As in *Mascio*, that explanation is missing here.

For similar reasons, the remainder of the ALJ's decision fails to cure the *Mascio* error. The Commissioner argues the ALJ's discussion of plaintiff's work activity, statements about her housing status, treatment history, and medical records explains the ALJ's RFC determination. *See* Def.'s Mem. 8–10. However, nowhere in the ALJ's discussion of those aspects of plaintiff's claim did the ALJ discuss plaintiff's capabilities in relation to task complexity. For example, unlike in *Shinaberry*, where the plaintiff worked for decades while impaired by her stable, lifelong disability, *see* 952 F.3d at 121–22, here the ALJ noted only that after plaintiff's alleged onset date she engaged in some work, none of which approached substantial gainful activity ("SGA"), *see* Tr. 77–78 (discussing apparent inconsistencies in plaintiff's statements of her work history but concluding that "there is no evidence of SGA-level activity since the alleged onset date"). With respect to plaintiff's living arrangement, which the ALJ noted plaintiff inconsistently described, *see* Tr. 82, the ALJ made no connection between that fact and her finding with respect to plaintiff's ability to maintain CPP, *see* Tr. 80–89.

Finally, the Commissioner argues the ALJ's discussion of plaintiff's treatment history and medical notes explains her RFC determination as it relates to her moderate CPP impairment finding. The Fourth Circuit in *Mascio* rejected similar arguments made by the Commissioner. In *Mascio*, the "Commissioner argue[d] that the ALJ properly excluded any limitation for [CPP] because the ALJ . . . disbelieved Mascio's claim that her pain medication caused daytime fatigue because she never sought treatment for this side effect." 780 F.3d at 638. The Fourth Circuit, however, noted that while "it [was] true that the ALJ concluded that Mascio's allegation that her pain caused daytime fatigue was 'less credible' because she did not complain about this side effect to her doctors," this fact left the Court "to wonder if the ALJ found her claim of fatigue partially or completely incredible, particularly since the ALJ elsewhere concluded that Mascio's pain medication 'impacts her thought processes.'" *Id.* That "inconsistency," the Fourth Circuit held, "need[] [have been] explained." *Id.* Relatedly, the Commissioner argued in *Mascio* "that the ALJ properly excluded the limitation for [CPP] because Mascio did not attend five scheduled follow-

*Everlena G. v. Kijakazi*
Civil No. DLB-20-784
September 1, 2021
Page 6

up appointments with a mental health counselor." *See id.* at n.8. The Fourth Circuit observed, however, that "despite Mascio not following up for treatment, the ALJ credited Mascio's adjustment disorder as requiring a limitation to unskilled work." *See id.*

Here, analogous to *Mascio*, the Commissioner argues the ALJ properly found plaintiff's CPP limitation did not require accommodation in part because the ALJ disbelieved plaintiff's statements of symptoms because plaintiff "did not seek any psychiatric treatment until mid-December 2017, after she had already requested a hearing in this case." *See* Def.'s Mem. 9; Tr. 85. Yet, also as in *Mascio*, the ALJ herself concluded that plaintiff's depression and anxiety impacted her ability to maintain CPP. *See* 780 F.3d at 638 n.8; Tr. 78–79. Most importantly, as in *Mascio*, the ALJ did not explain anywhere in her discussion of plaintiff's treatment how plaintiff could maintain CPP despite her moderate CPP impairment. *See* 780 F.3d at 638; Tr. 80–89. "[T]his inconsistency needs to be explained." *See Mascio*, 780 F.3d at 638.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 16, is denied, and the Commissioner's motion for summary judgment, ECF 21, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

                Sincerely yours,

                /s/

                Deborah L. Boardman
                United States District Judge